Pearson, J.
 

 The plaintiff bought a tract of land from one Allen, and paid for it, with the exception of the last instalment, for which the defendant, William, who was a constable, took judgment and held an execution. He also had other executions against the plaintiff, amounting in all to $91. In October 1839, the defendant, William, at the request of the plaintiff, advanced the $91 and dis*
 
 *14
 
 charged the executions, and the plaintiff executed to him a deed for the land. The deed is in the usual form, the consideration expressed is $300, and it was acknowledged by the plaintiff and registered in June 1841. The plaintiff continued in possession for a short time after the execution of the deed, when he contracted to sell the land to one Jackson for the price of $400, and put one Buchanan in possession, to hold for him until it was convenient for Jackson to move to the land. In about ten days thereafter, the defendants expelled Buchanan, and took possession without the consent of the plaintiff, and have held posession ever since. The defendant, William, after-wards refused to let Jackson into possession ; in consequence of which his contract of purchase made with the plaintiff was not carried into effect; and the defendant, William, executed a deed to his son, the other defendant.
 

 The plaintiff alleges, that, being hard pressed for money to pay off the executions, held by the defendant, William, he applied to him for a loan of the sum required for that purpose, and he agreed to advance the money, provided the plaintiff would execute to him an absolute deed for the land, with the understanding that it was to be a mere security for the money, which was to be repaid with in« terest, as soon as the plaintiff could effect a sale, when the deed was to be cancelled: that, accordingly, an absolute deed was executed, and the defendant advanced the .sum of $91, with which the executions were satisfied; and that the plaintiff soon afterwards contracted to sell the land to Jackson for $400, of which $100 was to be paid in the Spring of 1840, and out of which the plaintiff intended to repay the $91 and interest; but the trade with Jackson was defeated, in consequence of the defendants’ taking forcible possession and refusing to allow the title to be made to Jackson, whereby it was put out of the plaintiff’s power to repay the $91. The plaintiff further alleges, that the insertion of $300, as the considera
 
 *15
 
 tion, and the omission to insert the condition as to the right of redemption, was a contrivance on the part of the defendant, William, to oppress the plaintiff, who was in his power, and to defraud him out of the land ; and that the deed of the defendant William to his son, the other defendant, was made without consideration, and with notice, and intent to hinder the plaintiff’s remedy.
 

 The prayer is to redeem and for an account of rents and profits.
 

 The defendant, William, denies that the deed was intended as amere security for the @91, or that there was any fraud in omitting to insert the alleged condition, and alleges that he purchased “
 
 bona
 
 fidebut he does not allege positively, that he purchased for the price of @300, His allegation is, “ that he has long ago paid to the plaintiff the sum of $300, including the payments made at the request of the plaintiff, by the extinguishment of various judgments and executions, which were due and owing by the plaintiff, the last of which payments was @100 paid in cash by him to the plaintiff, upon the receipt of which he expressed himself fully satisfied.”
 

 The defendant, Peter, denies notice of the plaintiff’s claim, but does not allege that he paid any consideration to his father.
 

 It is settled, that a deed, absolute on its face, inay be converted into a mere security for money lent, by an allegation that such was the intention, and that the condition was omitted by mistake or surprise, or by the fraud and oppression of the party, who procured its execution : provided the allegation is clearly established by parol evidence of the admissions and declarations of the party, aided and confirmed by facts and circumstances.
 

 We think the plaintiff has made out his allegation in the manner required. Many witnesses prove admissions and declarations of the defendant, William, at different times, that the deed was intended as a security for the
 
 *16
 
 g91, advanced to discharge the executions, and that he gave as a reason for not having the deed registered at an earlier day, that the plaintiff was to have back his land and the deed was to be cancelled, provided the money and interest were repaid in silver : but he insisted that the plaintiffhad forfeited his right, by failing to pay at the time and in the manner agreed on. So the parol evidence is plenary, and, in fact, the only question made upon the argument was, as to the facts and circumstances, which the rule requires to support this evidence.
 

 We think that part of the rule has also been fully met.
 

 The defendant does not venture to allege positively, that he purchased at the price of $300, but answers in an unfair and equivocating manner.
 

 The land was worth $400 ; and $91, the sum advanced and which is proven to have been paid, was grossly inadequate, as a consideration for an absolute sale.
 

 The plaintiff was in need of money, and was in the power of the defendant, who held executions against him.
 

 The plaintiff retained possession for some short time, made a contract to sell to Jackson, and put a tenant in possession to hold for him, who did so, until the defendants expelled him ; which gives a complexion to the case, very different from what it would have been, if they had been let in by the consent of the plaintiff.
 

 These four facts are inconsistent with the idea of an absolute purchase, and tend strongly to support the allegation, which is established by the parol evidence, that the deed was intended merely as a security, and
 
 that
 
 the defendant fraudulently and oppressively insisted, as a condition for lending the money, that the deed should be absolute on its face, which was “yielded to by a necessitous. man.”
 

 Onthe other hand, the defendant has examined the two Subscribing .witnesses. One of them, his son, of bad character, swears that he witnessed the deed and saw
 
 *17
 
 the purchase money paid — he does not say what sum and speaks in the most general terms. The other says, he drew the deed, became a subscribing witness, and saw between seventy five and one hundred dollars paid. In answer to a leading question put by the defendants, he 'says he understood it was for the last payment for the land. He does not say what was the price given for the land ; whether the terms of the contract were stated over to him; why
 
 $300
 
 was inserted as the consideration, or who asked him to draw the deed; and leaves it uncertain, whether the money he saw paid' was not the last payment to Allen, from whom the plaintiff had purchased St- and to whom all but the last instalment had been paid__ This is the only way, in which his testimony .can be reconciled with repeated admissions, afterwards made by the defendant, William, at different times and to different witnesses. Another witness of the defendants says, he does not think the land is worth more than $150. This is inconsistent with the allegation, that the defendant had paid $300 for it, and this witness is also a man of bad character, and is contradicted by two witnesses, who fix the value at $400. The circumstance, that 0300 is inserted in the deed as the consideration, entirely unexplained, as it is, by the person who drew the deed, has no weight. It may have been inserted, because it was the price given by the plaintiff to Allen. At all events, as the deed was to be an absolute one on its (ace, the consideration made no difference, in absence of all proof, that more than $91 Was paid ; especially as '‘the various judgments and executions due and owing by the plaintiff',” which are alleged to have been paid, in addition to the $100 in cash, so as to make the sum of $300, are not produced nor accounted for, except the admitted amount of $91. So the circumstance, that the deed was acknowledged by the plaintiff in 1841, can, of itself, have no influence, for, if the plaintiff’had not acknowledged it, there
 
 *18
 
 were two subscribing witnesses, either of whom could have proven its execution ; and there is no allegation of a subsequent arrangement,, by which the original mortgage-was changed into an absolute sale, and no proof tending to shew that such was the fact.
 

 So the circumstanee, that no bond was given for the $91, has no weight. There is a marked distinction between landed security of ample value, so as to make the debt safe at all times, and a bond security upon personal property, which may perish — when the absence oí a bond has a tendency to rebut the idea of a loan. The only circumstance, which operates against the plaintiff, is his neglect to sue for six years alter the defendant had taken possession. This does not, however, raise a presumption of an abandonment of his claim, and, wo think, it is sufficiently accounted for by the fact, that the defendants had, by their own act, put it out of the power of the plaintiff to effect a sale of the land, and make a tender of the money lent.
 

 As to the defendant, Peter Stalcup, he is a volunteer, and the question of notice has no bearing.
 

 ■ It must be declared, that the deed was intended as a security for the payment of $91 and interest, advanced by the defendant, William Stalcup, for the use of the plaintiff, and that the omission to insert the condition in the deed was caused by the fraud and oppression of the said defendant, and the plaintiff' must have a decree to redeem, and for an account of the rents and profits, while the defendants have been in possession, and the defendants must pay the costs.
 

 Per Curiam. Decreed accordingly.